ROSE GLOBERMAN, PETITIONER-RESPONDENT, v. LEWIS STEEL PRODUCTS CORPORATION, NEW YORK STANDARD MANUFACTURING COMPANY, W. E. WARNER & COMPANY, INC., AND ENTERPRISE TINWARE CO., INC., RESPONDENT-PROSECUTORS.

Argued May 7, 1946—Decided September 17, 1946.

Before Justices BODINE, PERSKIE and WACHENFELD.

For the prosecutors Lewis Steel Products Corporation, New York Standard Manufacturing Co. and Enterprise Tinware Co., Inc., *Otis & Kilkenny* (*Victor S. Kilkenny,* of counsel).

For the prosecutors W. E. Warner & Co., Inc., *Coult, Satz, Morse & Coult* (*Joseph Coult, Jr.,* of counsel).

For the respondent, *Abner W. Feinberg* (*David Roskein* and *John A. Laird,* of counsel).

The opinion of the court was delivered by

WACHENFELD, J. This writ of *certiorari* brings up a judgment of the Hudson County Court of Common Pleas in a workmen's compensation case. That court reversed the determination of the Bureau, which denied respondent compensation for herself, as widow, and the two minor children of Samuel Globerman, deceased.

For many years Samuel Globerman worked on a commission basis for each of the prosecutors as a salesman. He covered

an area of his own selection in his own automobile and took orders from retail customers. Prosecutors would ship directly to the customers, who in turn made direct payments. Prosecutors paid commissions after making Social Security deductions. Prosecutors did not direct decedent to cover a certain area, but at times referred accounts to him for adjustment, advised him not to solicit certain customers who were approached by other salesmen, and referred prospective customers to him.

On August 26th, 1940, while performing the aforesaid services, decedent called upon a customer named Samuel Leiberman, who saw decedent walk out to his car and open the trunk door to obtain certain samples. Decedent then reappeared with a sample and told the customer that he was hit on the head by the door of the trunk. He then sat down and applied cold towels to his head for an hour. He continued in his employment until September 10th, 1940, when, while calling upon a customer, he suddenly collapsed. Taken to the hospital, his right arm and leg were found to be paralyzed and he was unable to speak. After undergoing continuous treatment at the hospital, he died on September 18th, 1940. Based on information provided by respondent, the attending physician diagnosed the death as arising from embolism of cerebral artery and chronic cardiac valvular disease, rheumatic.

For several years decedent had suffered from a heart murmur and was known to have a rheumatic heart condition. Prior to August 26th, 1940, he had been jovial and good natured, but after that date his personality changed and he became moody, irritable, and complained of headaches and dizziness.

A year and a half after death decedent's body was exhumed and an autopsy performed. The head showed no evidence of lacerations, bleeding or a blow, and an embolic process previous to death did appear.

The prosecutors argue that the judgment of the court below for the respondent should be reversed for the following reasons: first, there was no relationship of employer-employee but of an independent contractor; second, the proof of the

alleged accident was by hearsay evidence only; and third, there was no causal relationship between the accident to decedent on August 26th, 1940, and his subsequent death.

Taking these arguments in inverse order, the testimony on the third is largely that of experts who had made no personal examination of the decedent. Respondent relies almost wholly upon the expert testimony of a doctor who, in answer to a hypothetical question including all the facts in the case, stated it was his opinion that death resulted from the blow to decedent's head either by reason of delayed apoplexy or petechial (pinpoint) hemorrhages in the brain. The witness admitted that under either theory a cerebral hemorrhage would occur. The witness explained the absence of a hemorrhage by pointing to the fact that no cross-section of the brain had been made in the autopsy report to determine the occurrence of an internal cerebral hemorrhage. There is no physical evidence to which that witness could point to support his theory. The subsequent personality changes of decedent together with his proximate death are heavily relied upon for substantiation.

On the other hand, the prosecutors presented the expert testimony of five doctors, including the attending physician, all of whom concurred in the opinion that the cause of death was in no respect related to the blow to decedent's head. All five stated the immediate cause of death was an embolus which detached itself from the heart and went to the brain. In support of this opinion reference was made by these experts to the admitted rheumatic heart condition of the decedent, the mushy, soft, and grey condition of the brain, the absence in the autopsy report of any evidence of a cerebral hemorrhage, the low blood pressure of decedent and his ability to walk immediately after the accident. These witnesses rejected the explanation propounded by respondent on the grounds that there was no repeated trauma, which is the normal cause for petechial hemorrhage, and dismissed the single blow as a possible cause since the decedent was able to carry on his routine business for two weeks after the accident. The autopsy report itself failed to show that there was a blow to the head or even lacerations, much less a fracture. These experts testified had a cerebral hemorrhage occurred in this

case, the spinal tap would indicate a bloody, instead of a clear, fluid.

The position of the prosecutors finds support in the autopsy report, which confirmed the admitted history of an embolic process in deceased previous to death. The medical history of decedent convincingly supports that theory inasmuch as three years before the alleged accident decedent was turned down for life insurance because of a murmur of the heart, and at the time of death was known to be suffering from a chronic rheumatic heart condition.

The conduct of decedent immediately after the accident is inconsistent with respondent's explanation of the death. There was no loss of consciousness and decedent continued his normal routine, performing his regular duties for a period of two weeks, when he suddenly collapsed. It was not until several days later that decedent casually mentioned to his immediate family the occurrence on August 26th, 1940.

The personality changes of decedent after the accident, from a medical point of view, may have been caused by the blow, but according to the vast preponderance of expert testimony, had no connection with the subsequent death.

After a careful examination of all the testimony and an independent determination of the facts and law by this court, we reach the conclusion that the respondent has not sustained the burden of proving the causal relationship between the blow to decedent's head and subsequent death. The law places the burden of proof on the party seeking compensation, and it is not sustained unless the evidence preponderates in favor of the tendered hypothesis. Mere conjecture or pure surmise cannot be the basis of judgment. *Gilbert* v. *Gilbert Machine Works,* 122 *N. J. L.* 533; *Jones* v. *Newark Terminal and Transportation Co.,* 128 *Id.* 190; *affirmed,* 129 *Id.* 58. The evidence produced by the respondent does no more than establish a possibility that death occurred as contended and therefore fails to meet the standard required for recovery.

Inasmuch as the foregoing conclusions are dispositive of this case, no determination need be made on the remaining contentions of the prosecutors.

Judgment reversed, without costs.